IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:12-CT-3163-FL

ANNIS RECARDO LLOYD,                        )
                                            )
                    Plaintiff,              )
                                            )
            v.                              )                    ORDER
                                            )
LACHLAN MACNEISH, MARTIN J.                 )
ADAMS, KENNETH SARVIS,                      )
MATTHEW HOOK, MATTHEW                       )
TUCKER, CHARLIE THOMAS, DANIEL              )
CARAPEZZA, SEAN DIXON, WILLIAM              )
CAMBELL, JUSTIN SHINGLETON,                 )
AARON JOHNSON, ANTHONY                      )
PERKINS, RAKENA WALLER,                     )
CHARLES FONTI, JIMMIE SIMMONS,              )
DARRYL BEAN, DAVID GRISWOLD,                )
SUSAN B. JOHNSON, CRYSTAL DAVIS,            )
DENNIS KUDRO, SANDRA ROGERS                 )
WALKER, THOMAS WHITMORE,                    )
ALEXANDER WALTON, MICHAEL                   )
LEWIS, DANIEL THEISS, JAMES                 )
BROWN, DAVID HASTE, JULIE                   )
STEPHENSON, NANCY WILLAFORD,                )
LUTHA EASON, CATHERINE HILLER,              )
SAMUEL RIVENBARK, GILES                     )
PRUNEAU, JESSE J. DAY, JEREMY               )
BOSWELL, JOHN CARPENTER,                    )
PATRICIA HITE, ANDREW OAKES,                )
AND ALEXANDER  FRANQUI,[1]                  )
                                            )
                    Defendants.             )
                                            )

        The matter is before the court on defendants' motion for summary judgment (DE 58) and

second motion for sanctions (DE 74).  Also before the court is plaintiff's motion for reconsideration

_____

        [1] Defendants each submitted affidavits providing the correct spellings of their respective names.  Also, the
defendant referred to by plaintiff as Officer Dakes has informed the court that his correct name is Andrew Oakes.  The
caption has been amended to reflect the changes in defendants' names, and the clerk of court is DIRECTED to amend
the court's docket sheet to reflect these changes.

(DE 72). With the exception of defendants' second motion for sanctions, the issues raised have been fully briefed and are ripe for adjudication. For the following reasons, the court grants defendants' motion for summary judgment, grants in part and denies in part plaintiff's motion for reconsideration, and denies defendants' motion for sanctions.

## STATEMENT OF THE CASE

For ease of reference, the statement of the case as set forth in the court's June 11, 2014, order is as follows:

> Plaintiff brought this civil rights action, *pro se*, pursuant to 42 U.S.C. § 1983 alleging that defendants violated his rights pursuant to the Eighth Amendment to the United States Constitution during his prior incarceration at the Brunswick County Detention Center. Plaintiff subsequently filed five motions to amend his complaint. On December 6, 2012, the court conducted a frivolity review of plaintiff's complaint and amended pleadings. The court determined that plaintiff's pleadings were difficult to follow and allowed plaintiff the opportunity to particularize his complaint. As part of its December 6, 2012, order, the court granted plaintiff's first motion to amend as a matter of course, but denied as moot plaintiff's remaining motions to amend due to the fact that plaintiff was allowed to particularize his complaint. Plaintiff subsequently was granted an extension of time, until January 28, 2013, to file his amended complaint.
>
> On January 4, 2013, plaintiff filed a motion to amend his complaint. Plaintiff, next, filed a motion for reconsideration of the court's ruling on his October 25, 2012, and November 19, 2012, motions to amend. On April 23, 2013, the court entered an order denying plaintiff's motion for reconsideration but granting his January 4, 2013, motion to amend. The court also determined that plaintiff's amended pleading did not comply with the court's December 6, 2012, order in that it contained vague and conclusory allegations. The court allowed plaintiff one additional opportunity to amend his complaint. Plaintiff was directed to file his amended complaint within twenty-one days of the court's April 23, 2013, order. Plaintiff failed to comply, and, on May 31, 2013, the court dismissed plaintiff's complaint without prejudice.

2

On June 4, 2013, plaintiff filed a motion to rescind the court's dismissal of this action, which the court construed as a motion to alter or amend the court's judgment pursuant to Federal Rule of Civil Procedure 59(e). Plaintiff, in his Rule 59(e) motion, argued that the court should rescind the dismissal of his action because he complied with the court's April 23, 2013, order by faxing his amended pleading to the Clerk of Court on May 13, 2013. Plaintiff also filed a motion to amend his complaint.

On October 16, 2013, the court entered an order granting plaintiff's Rule 59(e) motion and motion to amend. The court re-instated plaintiff's action and dismissed without prejudice as frivolous plaintiff's Fourth Amendment claim alleging unconstitutional search and seizure, his Fourteenth Amendment due process claim alleging unconstitutional deprivation of property, his negligent deprivation of property claim, and his retaliation claim in connection with the alleged deprivation of property. The court additionally allowed plaintiff to proceed with his remaining claims against defendants [Lachlan MacNeish ("MacNeish"), Martin J. Adams ("Adams"), Kenneth Sarvis ("Sarvis"), Matthew Hook ("Hook"), Matthew Tucker ("Tucker"), Charlie Thomas ("Thomas"), Daniel Carapezza ("Carapezza"), Sean Dixon ("Dixon"), William Campbell ("Campbell"), Justin Shingleton ("Shingleton"), Susan B. Johnson ("Johnson"), Anthony Perkins ("Perkins"), Rakena Waller ("Waller"), Charles Fonti ("Fonti"), Jimmie Simmons ("Simmons"), Darryl Bean ("Bean"), David Griswold ("Griswold"), Aaron Johnson ("A. Johnson"), Crystal Davis ("Davis"), Dennis Kudro ("Kudro"), Sandra Rogers-Walker ("Rogers-Walker"), Thomas Whitmore ("Whitmore"), Alexander Walton ("Walton"), Michael Lewis ("Lewis"), Daniel Theiss ("Theiss"), James Brown ("Brown"), David Haste ("Haste"), Julie Stephenson ("Stephenson"), Nancy Willaford ("Willaford"), Lutha Eason ("Eason"), Catherine Hiller ("Hiller"), Samuel Rivenbark ("Rivenbark"), Giles Pruneau ("Pruneau"), Jesse J. Day ("Day"), Jeremy Boswell ("Boswell"), John Carpenter ("Carpenter"), Patricia Hite ("Hite"), Andrew Oakes ("Oakes"), and Alexander Franqui ("Franqui")].

(DE 57). In particular, plaintiff alleged the following claims pursuant to the Due Process Clause of the Fourteenth Amendment to the United States Constitution: (1) "on 2/5/10, [defendant MacNeish] ordered [him] removed from general population and situated in an oppressive administrative control housing unit [for a period of 2 ½ years] for the purpose of coercively-forcing

[him] to disclose personal information pertaining to his criminal case[;]" (2) "on 2/28/10, [defendant] Sarvis . . . order[ed] plaintiff to be served improper and insufficient food portions in an effort [] to emaciate plaintiff and thereby causing plaintiff to lose the equivalent of 60-pounds in less than 4 ½ months[;]" (3) "on []3/15/10, plaintiff was . . . "subject[ed] to extremely hot temperatures" for "more than 8 ½ months[;]" (4) "for a period longer than 2 ½ year(s) plaintiff['s] legal and regular mail(s) was intercepted and censored[,] opened[,] and tampered with, withheld and destroyed[;] and (5) defendants Oakes and Franqui "deliberately slammed" plaintiff's hands in the steel food tray door located in his cell door after plaintiff refused to allow the officers to close the door. (Am. Compl. (DE 29), pp. 1-4.) As relief, plaintiff requests monetary damages.

On February 14, 2014, plaintiff filed a document captioned "discovery." Plaintiff attached to his document 473 pages of "cumulative evidence" pursuant to "Fed. R. Civ. P. 26(a)(1)(B), 26(f)(1)."[2]

On April 11, 2014, defendants moved for sanctions pursuant to Federal Rule of Civil Procedure 37(d)(1)(A)(i), seeking reimbursement for defendants' attorney's fees, travel time, and court reporter expenses incurred as a result of plaintiff's failure to appear for a March 28, 2014, scheduled deposition. The court granted defendants' motion, and ultimately awarded defendants

---

[2] In opposition to defendants' motion for summary judgment, plaintiff directs the court to "more than 648-page(s) of cumulative evidence and grievances, affidavits[,] and letters already submitted." The court, however, is not obligated to comb through plaintiff's documents to extract relevant materials. See Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must support his assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations ..., admissions, interrogatory answers, or other materials."); Local Civil Rule 56(c)(1)(A), EDNC; see also, Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir.1994) ("'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'") (quoting Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 & n. 7 (5th Cir.1992))); Reynolds v. Northern Neck Regional Jail Authority, No. 3:07CV700, 2009 WL 1323224, at *1 (E.D.Va. May 11, 2009) ("Litigants may not thrust upon the court the burden of combing through the record to make a case on their behalf.") (citations and internal quotations omitted). Thus, the court has not sifted through plaintiff's discovery materials in order to make a case on his behalf.

the sum of $4,737.65 in attorney's fees and costs associated with plaintiff's failure to attend the March 28, 2014, deposition.

In the interim, on June 12, 2014, defendants filed a motion for summary judgment, arguing that plaintiff is unable to establish a constitutional violation. Alternatively, defendants assert the affirmative defense of qualified immunity. The motion was fully briefed.

Plaintiff subsequently filed a motion for reconsideration of the court's order granting defendants sanctions. The motion also was fully briefed. Finally, defendants filed a second motion for sanctions.

**STATEMENT OF FACTS**

Except as otherwise noted below, the undisputed facts are as follows. Plaintiff was arrested and entered the custody of the New Hanover County Detention Center (the "detention center") on January 20, 2008. (MacNeish Aff., ¶ 4.) Plaintiff remained at the detention center while awaiting trial in the New Hanover County Superior Court on the charge of failure to register as a sex offender, and was released from the detention center's custody on February 27, 2013. (Id.) Plaintiff filed the instant action while he was incarcerated at the detention center and raised claims involving his placement in administrative segregation, meals, cell temperature, legal and regular mail, and excessive force. The court addresses the facts pertinent to each individual claim in turn below.

A.    Administrative Segregation

On July 5, 2008, plaintiff was moved from general housing unit Lima to general housing unit Romeo because other inmates had threatened his life. (Id. ¶ 9.) The threats continued, and plaintiff was transferred from general population into administrative segregation. (Id. and Ex. G.) Plaintiff continued to spend frequent 45-day terms in administrative segregation due to both his disruptive

5

behavior and to preserve his safety. (Id. ¶ 9 and Exs. G, D; Adams Aff. ¶ 7; Lloyd dep. pp. 33-35, 44-45.) Plaintiff testified at his deposition that he frequently wrote grievances to staff complaining about his cell mates and threatened to hurt his assigned cell mates in order to get the them transferred from plaintiff's cell. (Lloyd dep. pp. 33-35, 44-45.)

B.    Meals

The meals for the detention center are prepared daily in the facility's kitchen by contract workers employed by Trinity Services Group ("Trinity"). (MacNeish Aff. ¶ 11.) Trinity is required to provide meals that meet the requirements of the North Carolina Administrative Code, 10 NCAC 14J Section .0900, Food, which sets forth the nutrition requirements for the meals served to inmates and states that inmates shall receive meals that provide a caloric intake of at least 2,100-2,500 calories per day. (Sarvis Aff. ¶ 6.) The Jails and Detention Section of the Division of Facility Services of the North Carolina Department of Health and Human Services ("DHHS") inspects the detention center twice annually. (Id.) The preparation, quality, and content of the meals provided to inmates are included as part of the inspections. (Id.) The DHHS did not find any significant food-related issue at the detention center during plaintiff's incarceration. (Id.)

Trinity employees prepare and serve inmate meals on individual trays or Styrofoam "to go boxes." (MacNeish Aff. ¶ 11.) All of the meals are identical to one another. (Id.) Each inmate eats the exact same thing as every other inmate (unless a particular inmate has a medical or religious reason why he cannot eat what is on the menu for that particular meal). (Id.) Trinity employees do not leave the kitchen and have no interaction with the inmates, nor do they have any direct interaction with any of the detention officers who ultimately distribute the meals to inmates. Once the meals are prepared and placed in a covered tray or box, the meals then are stacked onto carts in

6

the kitchen area by Trinity employees and inmate workers. (Id.) Inmate workers, who are supervised by detention officers, then move the food carts into the individual cell blocks, where the carts are handed over to detention officers who distribute the meals to the inmates. (Id.) The detention officers distribute the meals by taking the next available meal from the top of the stack and passing them out to individual inmates as they move down the unit hallways.

In response to plaintiff's complaints that detention center staff tampered with his food, Major Ruefle, as well as defendants MacNeish and Adams, reviewed the footage from the detention center's surveillance cameras to trace the journey of the particular meal about which plaintiff was complaining. (Id.) The officers observed, in reverse order, the movement of plaintiff's meal from it being handed to him by the detention officer all the way back to its preparation in the kitchen. (Id.) The officers did not observe any evidence of tampering with plaintiff's meal. (Id.) As a result of plaintiff's dissatisfaction with the detention center's food, he routinely refused his meal trays. (Lloyd Dep. p. 52.) In response to plaintiff's complaints, the officers ultimately permitted plaintiff to choose his own food tray.[3] (Id. p. 58.)

C.     Cell Temperature

In the spring, summer, and fall of 2010, plaintiff complained that he was subjected to hot temperatures for a period of over 8 months. Plaintiff admitted in his deposition that he intentionally stopped up the vents in his cell with wet toilet tissue, thereby preventing airflow. (Id. pp. 186-187.) From March 15, 2010, to November 2010, the temperature at the detention center did not exceed 85 degrees. (MacNeish Aff. ¶ 12.)

---

[3] During a short stretch in December 2011, the detention center did experience some issues with the quality of the food served by Trinity, but the issues did not involve the quantity of the food served. (MacNeish Aff. ¶ 11.) The food-related issues were resolved. (Id.)

7

In any event, detention center staff do not have control over the temperatures in the detention center. (Id.) Instead, the temperatures are remotely controlled via computer system by New Hanover County Property Management in Wilmington, North Carolina. (Id.) Further, the heating, ventilation and air conditioning system at the detention center is regularly maintained by maintenance workers from New Hanover County Property Management. (Id.) Any maintenance issues at the detention center are promptly reported to New Hanover County Property Management. (Id.)

D.      Regular and Legal Mail

According to the detention center's mail policy, incoming and outgoing general mail is inspected for contraband and/or money and to determine whether there is any existing threat. (MacNeish Aff. ¶ 13 and Ex. K.) Outgoing legal mail is sealed by the inmate in the presence of a detention officer, while incoming legal mail is opened in the presence of the inmate. (Id.)

Plaintiff's legal mail was opened outside of his presence on two occassions. First, plaintiff's legal mail was opened outside of his presence on October 26, 2008, by Deputy Perez and Lieutenant G.D. Johnson (neither of which is a defendant in this action). Plaintiff's legal mail also was opened outside of his presence outside of his presence on May 30, 2009, by Deputy C.A. Green (who also is not a defendant in this matter). (MacNeish Aff. ¶ 13.) Plaintiff was notified of the instances of mail mishandling, and detention center staff documented both mail-related issues. (Id. and Ex. L and Ex. I, part I, p. 94; part II, p. 26.)

E.      Excessive Force

On September 30, 2012, defendants Oakes and Franqui were assigned to deliver dinner to plaintiff's unit. (Franqui Aff. ¶ 8 and Oakes Aff. ¶ 9.) As Oakes and Franqui approached plaintiff's

8

cell, plaintiff began cursing and accusing the officers of tampering with his meal tray. (Id.) Franqui then unlocked and opened plaintiff's food tray slot and placed a meal onto plaintiff's food tray. (Id.) Plaintiff refused the meal. (Id.) Franqui informed plaintiff that he could either take the meal placed in his tray, or choose not to eat. (Id.) Plaintiff again refused the meal, and Franqui removed the meal from the food tray slot. (Id.) The officers left plaintiff's food tray slot open as they delivered the remaining meals in case plaintiff changed his mind when the officers made their return trip down the hall. (Id.)

On their return trip past plaintiff's cell, defendants Franqui and Oakes asked plaintiff if he had changed his mind about eating his dinner meal. (Franqui Aff. ¶ 9 and Oakes Aff. ¶ 10.) Plaintiff again refused to accept the meal. (Id.) Franqui then attempted to close plaintiff's food tray slot, but plaintiff placed his hands through the food tray slot preventing Franqui from closing the slot. (Id.) Franqui directed plaintiff to remove his hands from the food tray slot so that Franqui could close it, but plaintiff refused. (Id.) Franqui directed plaintiff to remove his hands a second time, but plaintiff again refused. (Id.)

Following plaintiff's second refusal to remove his hands from the food tray slot, defendant Franqui tried to close plaintiff's food tray slot by pushing up from the bottom of the slot with his hands. (Franqui Aff. ¶ 10 and Oakes Aff. ¶ 11.) Franqui was not able to close the food tray slot, and plaintiff refused repeated orders to remove his hands from the food tray slot. (Id.) Oakes then assisted Franqui in attempting to close plaintiff's food slot door and plaintiff continued to refuse repeated orders from both officers to remove his hands. (Id.) The officers ultimately were able to overcome plaintiff's resistance and close the food tray slot. (Franqui Aff. ¶ 11 and Oakes ¶ 12.)

9

On October 1, 2012, the detention center's medical staff examined plaintiff and determined that he had an abrasion on his left arm. (Adams Aff. Ex. A.) Plaintiff informed medical staff, in the course of his examination, that his arm was closed in the food slot door by an officer, but that he did not believe that his arm was broken. (Id.) Rather, plaintiff expressed concern about a bump on his forearm, but denied any pain with movement. (Id.) Plaintiff's medical records reflect that plaintiff had a one-inch by two-inch mass on his left forearm. (Id.) Medical staff noted that plaintiff's arm was tender, but that plaintiff had full range of motion in his arm and wrist. (Id.)

## DISCUSSION

A.     Motion for Reconsideration and Second Motion for Sanctions

Plaintiff seeks reconsideration of the court's February 13, 2015, order awarding defendants $4,737.65 in attorney's fees and costs associated with plaintiff's failure to attend the March 28, 2014, deposition. Defendants oppose plaintiff's motion, and subsequently filed a second motion for sanctions. Defendants request additional sanctions, including dismissal of this action with prejudice, due to plaintiff's failure to comply with the court's February 13, 2015, order directing that plaintiff pay the $4,737.65 amount imposed as by March 9, 2015.

Plaintiff, in his motion for reconsideration, contends that he is unable to afford the court's original award of $4,737.65 in sanctions because he now is incarcerated in the "Metropolitan Detention Center" and recently was denied disability benefits. For the reasons set forth in this court's February 13, 2015, order, plaintiff's motion to reconsider the imposition of sanctions is DENIED. However, in light of plaintiff's financial circumstances, the court will extend the deadline for payment of the imposed sanctions until November 2, 2015. Thus, defendants' second motion for sanctions is DENIED.

As part of his motion for reconsideration, plaintiff asserts that his ability to respond to defendants' motion for summary judgment has been hindered because all of the documents pertaining to this case were stolen. On July 10, 2014, plaintiff filed a motion for an extension of time raising this issue and requesting copies of "case, especially plaintiff'(s) motion submitting cumulative evidence particularizing his claim."[4] The next day, the court granted plaintiff an extension of time to respond to defendants' motion for summary judgment. On the same date, the clerk of court sent plaintiff a letter explaining that due to budgetary restraints and the volume of documents (786 pages) requested, the clerk's office could not provide plaintiff with a copy the requested materials. However, as a courtesy, the clerk sent plaintiff a copy of defendants' memorandum in support of their motion for summary judgment (without attachments). The clerk further encouraged plaintiff, who was not incarcerated at that time, to view electronically available documents and docket sheets through the Public Access to Court Electronic Records program or to make any request for copies, along with payment of 50 cents per page, directly to the clerk's office. As a result, plaintiff had the opportunity to obtain any necessary documents and may not now raise the issue to defeat or prolong the resolution of defendants' motion for summary judgment.

B.      Motion for Summary Judgment

        1.      Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact.

---

[4] It is not entirely clear which document plaintiff is referring to in his July 10, 2014, motion. Plaintiff submitted filings labeled cumulative evidence on January 4, 2013, and February 14, 2014. Both filings are voluminous.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. <u>Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. <u>Anderson</u>, 477 U.S. at 250.

       2.     Analysis

Defendants assert the affirmative defense of qualified immunity. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). In other words, a government official is entitled to qualified immunity when (1) the plaintiff has not demonstrated a violation of a constitutional right, or (2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct. <u>Pearson v. Callahan</u>, 555 U.S. 223, 236 (2009).

       a.     Placement in Administrative Segregation

Plaintiff contends that his due process rights were violated because he was placed in administrative segregation for a period of approximately 2 ½ years in order to coerce him to disclose personal information regarding his criminal action. The court now determines whether plaintiff's placement in administrative segregation violated his due process rights.

"[A] detainee may not be punished prior to the adjudication of guilt in accordance with due process of law." <u>Bell v. Wolfish</u>, 441 U.S. 520, 535-36 (1979). To prevail on a procedural due process claim, an inmate first must demonstrate that he was deprived of life, liberty, or property by government action. <u>Sandin v. Conner</u>, 515 U.S. 472 (1995). An inmate does not have a liberty or

property interest in a particular custody classification, even where disciplinary segregation is involved, unless the inmate can demonstrate that the restraints "'impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" Beverati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997) (quoting Sandin, 515 U.S. at 484); see McKune v. Lile, 536 U.S. 24, 26 (2002) (noting that the "decision where to house inmates is at the core of prison administrators' expertise.").

In this case, the record reflects that plaintiff was assigned to administrative segregation for multiple 45-day segments of time due to his disruptive behavior and for his own protection because he both threatened and received threats from other inmates. (Lloyd dep. pp. 33-35, 44-45; MacNeish Aff. Part II, p. 31, 32, 55; Adams Aff. ¶ 7; Sarvis Aff. ¶ 16.)  It is not atypical for inmates to be placed on administrative segregation for any number of reasons, including to protect an inmate's safety or to protect other inmates from a particular inmate.  See In re Long Term Administrative Segregation of Inmates Designated as Five Percenters, 174 F.3d 464, 469 (4th Cir. 1999) ("Prison officials should be accorded wide-ranging deference in adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.") (internal quotation omitted); Beverati, 120 F.3d at 502;[5] see also, Jones v.

_____

[5] In Beverati, 120 F.3d at 502, the Fourth Circuit determined that the following conditions in administrative segregation did not implicate an inmate's liberty interest:

> ... cells were infested with vermin; were smeared with human feces and urine; and were flooded with water from a leak in the toilet on the floor above. And, [the inmates] assert, they were forced to use their clothing and shampoo to clean the cells. In addition, Inmates maintain that their cells were unbearably hot and that the food they received was cold. Furthermore, Van Aelst submitted an affidavit indicating that those assigned to administrative segregation did not receive clean clothing, linen, or bedding as often as required by the regulations governing administrative segregation; that they were permitted to leave their cells three to four times per week, rather than seven, and that no outside recreation was permitted; that there were no educational or religious services available; and that food was served in considerably smaller portions.

13

<u>Walker</u>, 358 F. App'x 708, 712 (7th Cir. 2009) ("[Inmates] do not have a liberty interest in avoiding placement in discretionary segregation meaning segregation imposed for administrative, protective, or investigative purposes.") (internal quotation omitted); <u>Temple v. Oconee County</u>, No. 6:13-144-JFA-KFM, 2014 WL 4417702, at *3 (D.S.C. Sept. 8, 2014) ("Courts have recognized that administrative separation or segregation may, for example, serve any number of the following legitimate interests—to protect an inmate's safety, to protect other inmates from a particular inmate, to break up potentially disruptive groups of inmates, or simply to await later classification or transfer.").

In addition, the record contains no evidence supporting plaintiff's contention that he was transferred to segregation in order to extract information regarding his criminal proceedings. Further, nothing in the record reflects that the nature of plaintiff's assignments to administrative segregation at the detention center comprised the atypical hardships contemplated by <u>Sandin</u> or <u>Beverati</u>. <u>See</u> <u>Fulks v. Metts</u>, No. 06-980, 2007 WL 2104845, at *9 (D.S.C. July 17, 2007) (finding that placement of violent inmate in segregation for security reasons was reasonably related to legitimate penological interest and was not impermissible punishment). Thus, plaintiff has failed to establish a constitutional violation, and defendants are entitled to qualified immunity for this claim.

   b.  Food-Related Claims

Plaintiff alleges that the conditions of his confinement violated his right to be free from cruel and unusual punishment pursuant to the Fourteenth Amendment to the United States Constitution. As a pretrial detainee, plaintiff's claims are evaluated under the Due Process Clause, rather than the

14

Eighth Amendment.  Bell, 441 U.S. at 535 n.16.  However, the due process rights of detainees are at least coextensive with the Eighth Amendment rights of convicted prisoners, and perhaps greater. Riley v. Dorton, 115 F.3d 1159, 1166–67 (4th Cir. 1997), abrogated on other grounds by, Wilkins v. Gaddy, 559 U.S. 34 (2010).  Accordingly, plaintiff's Fourteenth Amendment due process claims will be analyzed under the Eighth Amendment.

"In order to make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.' " Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting Williams v. Griffin, 952 F.2d 820, 824 (4th Cir. 1991)). The first prong is an objective one–the prisoner must show that "the deprivation of [a] basic human need was *objectively* sufficiently serious"–and the second prong is subjective–the prisoner must show that "*subjectively* the officials act[ed] with a sufficiently culpable state of mind."  See Strickler, 989 F.2d at 1379 (internal quotations omitted).

Plaintiff contends that several defendants served plaintiff "improper and insufficient food portions in an effort to 'emaciate' plaintiff" on numerous occasions.  (Am. Compl. (DE 29), p. 2.) Assuming, without deciding, that plaintiff is able to satisfy the objective prong of the Eighth Amendment test, the court focuses on the second prong of the Eighth Amendment test–whether any defendant acted with deliberate indifference to plaintiff's dietary needs.  "Deliberate indifference entails something more than mere negligence, . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."  See Farmer v. Brennan, 511 U.S. 825, 835 (1994).  It requires that a prison official actually know of and

disregard an objectively serious condition, medical need, or risk of harm. Id. at 837; Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995).

It is well-settled that inmates have a right to "nutritionally adequate food, prepared and served under conditions that do not present an immediate danger to the health and well being of the inmates who consume it." Shrader v. White, 761 F.2d 975, 986 (4th Cir. 1985) (internal quotation marks and citations omitted). However, the United States Constitution does not guarantee food that is prepared and served in a culinarily pleasing manner. See Harrison v. Moketa, Motycka, 485 F. Supp. 2d 652, 656 (D.S.C. Feb. 15, 2007) (citation omitted), aff'd 235 F. App'x 127 (4th Cir. Aug. 8, 2007); see also, Kemp v. Drago, No. C/A No. 1:12-1481-JFA-SVH, 2013 WL 4874972, at *9 (D.S.C. Sept. 11, 2013) ("The Constitution does not guarantee [] food that is prepared and served in a culinarily-pleading manner."), aff'd, 558 F. App'x 328 (4th Cir. 2014).

Applying these principles, the court finds that plaintiff has not established an Eighth Amendment violation. Although plaintiff may have experienced a weight loss while at the detention center, the record reflects that plaintiff's weight loss was due, in part, to his admitted refusal of his meal trays. (Lloyd dep. p. 52.) The record further reflects that defendants did not act with deliberate indifference to plaintiff's diet or health concerns for the following reasons. First, the detention center's staff was not responsible for preparing inmate meals. Rather, all meals were prepared and packaged by Trinity, an outside contractor. Second, the record reflects that the detention center's staff was responsive to plaintiff's meal-related complaints and, by plaintiff's own admission, ultimately permitted plaintiff to choose his own meal package from among all of the meals being delivered. Third, plaintiff has not presented any evidence to support a finding that any defendant tampered with his meals. Further, aside from random names connected with dates, plaintiff does

not provide any specific factual support for any incident of alleged meal tampering. Based upon the foregoing, plaintiff again has failed to establish that any defendant acted with deliberate indifference to the provision of plaintiff's meals, and defendants are entitled to qualified immunity.[6]

c.      Cell Temperatures

Plaintiff asserts that he was subjected to "extremely hot temperatures for a period of 8 ½ months beginning on March 15, 2010," because his unit had no "operating air-conditioning or ventilation system." (Am. Comp. (DE 29), p. 3.) As stated,"[i]n order to make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.'" Strickler, 989 F.2d at 1379.

The court begins with the objective prong of the Eighth Amendment test. Plaintiff has not demonstrated that he suffered any injury as a result of alleged warm temperatures. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981) ("[T]he constitution does not mandate comfortable prisons . . . ."); Strickler, 989 F.2d at 1381 (finding that in order to "withstand summary judgment" on an Eighth Amendment claim, a prisoner "must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions."). Thus, plaintiff is unable to satisfy the objective prong of the Eighth Amendment test.

The court next considers the subjective prong of the Eighth Amendment test–whether defendants acted with deliberate indifference to the alleged warm temperatures at the detention center. Regarding the alleged lack of ventilation in plaintiff's cell, plaintiff admits that he chose to

_____

[6] To the extent plaintiff complains about the subjective quality of the food provided at the detention center, such complaints are not sufficient to state an Eighth Amendment claim. Escalante v. Huffman, No. 7:10CV00211, 2011 WL 3107751, at *9 (W.D. Va. July 26, 2011) ("Mere dissatisfaction with the variety, portion size or savor of his prison diet is not sufficient to state a claim.") (citing Hamm v. Dekalb Cnty, 774 F.2d 1567, 1575 (11th Cir. 1985)).

stop up the vents in his cell with wet toilet paper, which contributed to the alleged lack of airflow. (Id. pp. 186-187.) The record further reflects that detention center staff did not have control over the temperature in the housing block because the thermostat was controlled by an outside property management company. (MacNeish Aff. ¶ 12.) Finally, plaintiff has not provided sufficient factual support for this claim, including any dates, times, or identifying information for defendants. See White v. White, 886 F.2d 721, 723 (4th Cir. 1989) (dismissing complaint where it "failed to contain any factual allegations tending to support [plaintiff's] bare assertion . . . ."). Based upon the foregoing, plaintiff is unable to establish that any defendant acted with deliberate indifference. Because plaintiff is unable to establish the objective or subjective prongs of the Eighth Amendment test, defendants are entitled to qualified immunity for this claim.

   d. Interference with Mail

  Plaintiff contends that his legal and regular mail was "intercepted and censored opened and tampered with" for a period of 2 ½ years. (Am. Compl. (DE 29), p. 3.) Plaintiff makes the following mail-related allegations in his amended complaint:

> Mail(s) to family and legal organization(s) was never received, especially mail dealing with this particular case-matter for representation by the ACLU-Director (at the time) "Katherine Lewis Parker," intercepted to prevent the filing of this case and of which was given to an "Officer OH" on, June 15, 2011. . . .
>
> This unlawful action continued when plaintiff attempted to send which was never received and on these date(s); 5/15/10-Officer Walton (withheld). Plaintiff observed his mail being opened outside of his presence by an "Sgt. Haste" (at the time) and on 2/28/10, by both officers B. Lewis and Stephenson. On 10/25/11, mail to an attorney was given to an officer Theiss was opened and returned to plaintiff same day. On 12/2/11, Plaintiff(s) legal mail to "NAACP, ACLU and National Prison Project was withheld and opened by the office of classification(s), namely," Sgt(s) Willaford and Brown and Officer(s) Davis, Hiller and Rivenbark . . . .

18

Other actions, violation(s) occurred on these dates: 7/1/11-Officer
Pruneau (Legal Mail to ACLU-Not Received), 7/19/11-Officer J.J.
Day (Privilege mail to Ed McManon not received), 11/7/11-Officer
Boswell (mail to national prisoner project not received),
11/15/11-Officer Eason-(mail to FBI-Kevin Kendrick-Claimed
Moved/NAACP-not received. 1/30/12-Officer Carpenter (mail to
N.C. Court of Appeals pertaining to defendant(s) violating "writ of
mandamus" not received, etc.

(Am. Compl. (DE 29), pp. 3-4.)   Plaintiff also contends that defendants opened his legal mail on

four additional occasions.  (Id.)

Inmates have a First Amendment right to send and receive mail.  See Thornburgh v. Abbott,

490 U.S. 401, 407 (1989).  However, prison officials may adopt regulations that impinge on an

inmate's constitutional rights if those regulations are "reasonably related to legitimate penological

interests."  Turner v. Safley, 482 U.S. 78, 89 (1987).  The Fourth Circuit, in Altizer v. Deeds, 191

F.3d 540, 547-48 (4th Cir. 1999), held that "the opening and inspecting of an inmate's outgoing mail

is reasonably related to legitimate penological interests, and, therefore, constitutional . . . ."

Moreover, in noting the delicate nature of prison management, the Supreme Court has "afforded

considerable deference to the determinations of prison administrators who, in the interest of security,

regulate the relations between prisoners and the outside world."  Thornburgh, 490 U.S. at 408

(citation omitted).

Here, the record reflects that the detention center followed a policy of inspecting incoming

and outgoing general mail for contraband in order to protect the safety and welfare of the staff and

inmates at the facility.  (MacNeish Aff. Ex. K.)  The detention center's policy is constitutional.

Altizer, 191 F.3d at 548.  To the extent plaintiff alleges that some items of regular mail were either

lost or returned to him, plaintiff fails to establish that defendants had any malicious intent to keep

plaintiff from communicating with the public.  To the extent plaintiff complains that his mail was

19

not received at its destination, detention center staff has no control over plaintiff's mail once it leaves the detention center. Finally, plaintiff's conclusory allegations regarding tampering with his regular mail are not sufficient to establish a constitutional claim. Couch v. Jabe, No. 7:11-cv-34, 2012 WL 3043105, at *8 (W.D. Va. July 25, 2012). Thus, plaintiff has not established a First Amendment violation with respect to the alleged regular mail tampering, and defendants are entitled to qualified immunity for this claim.

The court now turns to plaintiff's allegations regarding his legal mail. Specifically, plaintiff alleges that his legal mail was opened, read, and censored. Inmates have a right to reasonable access to state and federal courts and to communicate with attorneys. See, e.g., Ex Parte Hull, 312 U.S. 546, 548-49 (1941); Hudspeth v. Figgins, 584 F.2d 1345, 1347 (4th Cir. 1978) (per curiam). However, in order to state a claim for denial of access to the courts, the inmate must show actual injury or that a defendant's conduct hindered his efforts to pursue a legal claim. See, Lewis v. Casey, 518 U.S. 343, 351-52 (1996); Michau v. Charleston County, 434 F.3d 725, 728 (4th Cir. 2006). The Supreme Court held in Lewis that inmates must be provided "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." Lewis, 518 U.S. at 351 (quotation omitted). The right to access the courts extends to direct criminal appeals, habeas corpus proceedings, and civil rights actions challenging conditions of confinement. ld. at 354-55. The actual injury requirement mandates that an inmate "demonstrate that a nonfrivolous legal claim had been frustrated or impeded." Id. at 353. The Court did not extend the holding to include the right to "litigate effectively once in court." Id. at 354 (disclaiming language in Bounds v. Smith, 430 U.S. 817, 825 (1977), suggesting otherwise).

Plaintiff, in this case, failed to allege an injury for the alleged mishandling of his legal mail. In fact, the record reflects that plaintiff's ability to litigate this action has not been impeded by the detention center's mail handling. Moreover, isolated incidents of mail mishandling do not rise to the level of a constitutional violation. See Buie v. Jones, 717 F.2d 925, 926 (4th Cir. 1983) (finding isolated incidents of opening of legal mail does not state a cognizable § 1983 claim). Thus, plaintiff cannot establish a constitutional violation on this ground.

Plaintiff additionally alleges that defendants violated his constitutional rights because they opened his legal mail outside of his presence. The record reflects that plaintiff's legal mail inadvertently was opened outside of his presence on two occasions. (MacNeish Aff. ¶ 13 and Ex. L and Ex. I, part I, p. 94; part II, p. 26.) However, as stated, isolated incidents of mail mishandling are insufficient to constitute a constitutional violation. See Buie, 717 F.2d at 926. Moreover, plaintiff has not presented any evidence, aside from his conclusory allegations, to demonstrate that prison officials intentionally opened or interfered with his legal mail on other occasions. Based upon the foregoing, plaintiff has not established a constitutional violation and defendants are entitled to qualified immunity for these claims.

To the extent plaintiff alleges that certain items of mail were lost, confiscated or stolen by prison officials, an inmate may not bring a federal claim for deprivation of property through the "random and unauthorized" acts of government officers, whether negligent or intentional, when state law provides an adequate remedy. To state a procedural or substantive due process claim, an inmate must demonstrate that he was deprived of life, liberty, or property by government action. Beverati, 120 F.3d at 502.

Beginning with plaintiff's procedural due process claim, he is not entitled to relief because even "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post[-]deprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533 (1984) (holding that intentional deprivations of property by State employees do not violate due process until and unless the State refuses to provide a suitable post-deprivation remedy); see Mora v. City of Gaithersburg, 519 F.3d 216, 230-31 (4th Cir. 2008). Here, an adequate post-deprivation remedy is available to plaintiff in state court. See, e.g., Wilkins v. Whitaker, 714 F.2d 4, 6-7 (4th Cir. 1983). Because plaintiff has an adequate post-deprivation remedy in state court, his procedural due process claim fails.

As for substantive due process, the Fourth Circuit defines it as "an absolute check on certain governmental actions notwithstanding the fairness of the procedures used to implement those actions." Front Royal and Warren County Industrial Park Corp. v. Town of Front Royal, Virginia, 135 F.3d 275, 287-88 (4th Cir. 1998) (internal quotation omitted). The substantive due process check "is warranted only where no process could cure the deficiencies in the governmental action . . . In other words, governmental action offends substantive due process only where the resulting deprivation of life, liberty, or property is so unjust that no amount of fair procedure can rectify it." Id.

In this case, the court does not find the alleged deprivation so unjust as to be incapable of avoidance by any procedural protections. Moreover, post-deprivation state remedies are available to plaintiff. Thus, plaintiff has not established a substantive due process violation. See Williams v. Crawford, 449 F. App'x 288, 289 (4th Cir. 2011) ("Because Williams had an adequate post-

deprivation remedy under Virginia law for the allegedly wrongful confiscation, his property was not taken without due process."); see also, Calhoun-El v. Maynard, No. RDB-07-220, 2007 WL 5254010, at *n.9 (D. Md. Nov. 19, 2007) ("Further, allegations that a state actor has negligently or intentionally destroyed, lost, or interfered with legal mail or other personal property do not state a procedural due process claim where effective state remedies are available.") (citing Pink v. Lester, 52 F.3d 73 (4th Cir. 1995)), aff'd, 267 F. App'x 252 (4th Cir. Feb. 27, 2008). Because plaintiff fails to state a due process claim in connection with his alleged stolen mail, defendants are entitled to qualified immunity.

e.     Excessive Force

Plaintiff alleges that defendants Oakes and Franqui used excessive force against him when they allegedly slammed plaintiff's hand in the food tray door of plaintiff's cell and applied pressure for "maybe a couple of minutes[,]"causing a "thelioma" on his hand.   (Lloyd dep. p. 158.)  The Eighth Amendment prohibits the "unnecessary and wanton infliction of pain" which constitutes cruel and unusual punishment.  Whitley v. Albers, 475 U.S. 312, 319 (1986).  The excessive force inquiry has an objective prong and a subjective prong.  Under the objective prong, a plaintiff must establish that the forced used was "nontrivial."  Wilkins, 559 U.S. at 39.  In this case, defendants' analysis of the objective prong of the Eighth Amendment test is intertwined with their analysis of the subjective prong of the Eighth Amendment test.  Accordingly, the court likewise focuses its inquiry on the subjective prong of the Eighth Amendment test.

To satisfy the subjective component, a claimant must show that a prison official acted with a "sufficiently culpable state of mind."   Wilson v. Seiter, 501 U.S. 294, 297 (1991).  For an excessive force claim, the relevant state of mind is "wantonness in the infliction of pain."  Whitley,

475 U.S. at 322. Although "[a]n express intent to inflict unnecessary pain is not required" to establish an excessive force claim under the Eighth Amendment, an inmate must show that the defendant inflicted unnecessary and wanton pain and suffering. Id. at 319. In determining whether a prison official has acted with "wantonness," relevant factors include: (1) the need for the application of force; (2) the relationship between the need and the amount of force used; (3) the threat reasonably perceived by the responsible officials; and (4) any efforts made to temper the severity of a forceful response. Whitley, 475 U.S. at 321; Hudson v. McMillian, 503 U.S. 1, 7 (1992).

Applying the Whitley factors to the instant case, the record does not support plaintiff's excessive force claim. First, the court examines whether there was a need for the force. Plaintiff admits that he refused direct orders to remove his hands from the food tray slot. (Lloyd dep. pp. 157-158.) Plaintiff's disruptive behavior necessitated the need for force because it created a security risk in that plaintiff had the ability to reach out of his cell to grab passing detention officers or other inmates. (Franqui Aff. ¶ 7 and Oakes Aff. ¶ 8.) Due to the potential security risk, force was required to regain order. Accordingly, the first Whitley factor weighs in favor of defendants.

As for the second Whitley factor, the relationship between the need and the amount of force used, the record reflects that force was needed to close the food tray slot. The record further reflects that plaintiff continued to resist the closure of the food slot door while defendants Franqui and Oakes attempted to close the door. The relatively minor degree of force used by defendants is reflected in the fact that plaintiff sustained only a abrasion to his left arm. Thus, the second Whitley factor weighs in favor of defendants.

The court now turns to the final two <u>Whitley</u> factors, the perceived threat and any efforts made to temper the severity of a forceful response. Although plaintiff did not pose a serious threat at the time the incident occurred because he was confined in his cell, plaintiff was being disruptive and failed to follow repeated orders to remove his hands from the food slot door. The officers attempted to resolve the situation without force by providing plaintiff adequate warning before attempting to close the food slot door, and plaintiff admits that he disregarded the officers' warning.

Defendants Franqui and Oakes then engaged in a brief struggle with plaintiff to close the food slot door. There is no evidence that either defendant Oakes or Franqui used force maliciously and sadistically. Rather, the record reflects that the use of force was implemented in a good faith effort to restore discipline in response to intentionally disruptive behavior. <u>See, e.g.</u>, <u>Garris v. Gober</u>, No. 1:10-CV-504, 2013 WL 4502261, at *4 (M.D.N.C. Aug. 22, 2013) ("Mr. Garris's refusal to move his arm out of the door presented security and safety risks that justified Sergeant Gober's use of some degree of force, as long as that force was not constitutionally excessive."), <u>aff'd</u>, 554 F. App'x 211 (4th Cir. 2014).

Thus, the remaining two <u>Whitley</u> factors weigh in favor of plaintiff. Plaintiff is unable to establish a constitutional violation, and Oakes and Franqui are entitled to qualified immunity for this claim.

C.     New Claims

Plaintiff, in his response to defendants' motion for summary judgment states that his five-year detention at the detention center was "unlawful incarceration or detainment." (Pl's Resp. (DE 65), p. 2.) To the extent plaintiff attempts to allege this or any other new claims in his miscellaneous filings or in response to summary judgment, such claims are not part of this action

25

because plaintiff failed to move to amend his complaint to include any new claims pursuant to Federal Rule of Civil Procedure 15(a). Moreover, permitting plaintiff the opportunity to amend his complaint at this juncture would be prejudicial to defendants. For these reasons, the court does not consider any new claims asserted in plaintiff's miscellaneous filings or in response to defendants' motion for summary judgment as part of this action, and such claims are DISMISSED without prejudice. See United States v. ex rel. DRC, Inc. v. Custer Battles, LLC, 472 F. Supp. 2d 787, 796 (E.D. Va. 2007) (citing Coleman v. Quaker Oats Co., 232 F.3d 1271, 1292 (9th Cir. 2000)).

## CONCLUSION

For the foregoing reasons, defendants motion for summary judgment (DE 58) is GRANTED, and plaintiff's motion for reconsideration (DE 72) is GRANTED in part and DENIED in part. The motion is GRANTED to the extent that the court extends the deadline for payment of the imposed sanctions until November 2, 2015. The remainder of plaintiff's motion is DENIED. Defendants' second motion for sanctions (DE 74) is DENIED. The clerk is DIRECTED to amend the court's docket sheet to reflect the changes made to the caption. The clerk also is DIRECTED to close this case.

SO ORDERED, this the 24th day of March, 2015.

_____
LOUISE W. FLANAGAN
United States District Judge